IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
WESTERN DIVISION

| | |
|---|---|
| ORGLER HOMES, INC. and DAVID ORGLER,<br><br>    Plaintiffs,<br><br> vs.<br><br>CHICAGO REGIONAL COUNCIL OF CARPENTERS, UNITED BROTHERHOOD OF CARPENTERS AND JOINERS OF AMERICA AND LOCAL UNION NO. 2087 OF THE UNITED BROTHERHOOD OF CARPENTERS AND JOINERS OF AMERICA,<br><br>    Defendants. | Case No. 06 C 50097<br><br>Magistrate Judge<br>P. Michael Mahoney |

## MEMORANDUM OPINION AND ORDER

Currently before the court are Plaintiffs' Motion to Strike Defendants' Memorandum in Support of its Motion for Summary Judgment, Defendants' Motion to Bar Evidence Related to Damages, and Defendants' Motion to Strike Plaintiffs' Expert's Report. This opinion addresses each of these motions in turn.

**I. Plaintiffs' Motion to Strike Defendants' Memorandum in Support of its Motion for Summary Judgment**

Defendants' Motion for Summary Judgment was filed on February 29, 2008. In support of defendants' motion were 66 exhibits, including the declarations of six defense witnesses. Each of these witnesses had been disclosed throughout the normal course of discovery and had

1

been interviewed by defense counsel. Plaintiffs' counsel elected not to depose any of these six defense witnesses.

In the days immediately preceding the filing of defendants' Motion for Summary Judgment, defense counsel interviewed each of these six defense witnesses for a second time in an effort to secure their declarations, which were then used in support of defendants' Motion for Summary Judgment. In the course of these interviews, certain new evidence was revealed for the first time. (Defendants' Response at 3). Specifically, the newly revealed evidence consisted of the following: ten pages of notes taken by two of the defense witnesses, an additional list of persons who received picket remuneration, letters sent to Hogan Roofing and Harrison Carpentry from the Carpenters Union, a letter sent to Karen Rioux from the NLRB regarding Orgler's withdrawal of his unfair labor practice charges, and two DVDs portraying "taints" to the reserve gates as well as the signs used by the Union. (Defendant's Response at 5).

Defense counsel immediately disclosed this newly revealed evidence to opposing counsel and supplemented its answers to plaintiffs' interrogatories pursuant to Rule 26(e). Defendants characterize their supplementation as follows:

> 1. The Supplemental Answers to Plaintiffs Interrogatories added the names of Daniel McMahon and Joel Pagose as persons who were consulted in answering the interrogatories.
>
> 2. The Supplemental Answers to Plaintiffs Interrogatories add a conversation between Organizer Matt Swanson and an unnamed carpenter working at the Railway Estates project in January 2006 during which the carpenter responded that he was working for Orgler. Defendants still do not know the name or identity of this individual.
>
> 3. The Supplemental Answers to Plaintiffs Interrogatories identify supplemental "Picket Remuneration Sheets" which were part of the supplemental document disclosure. These were Picket Remuneration Sheets turned in since Defendants' last production of documents and were in addition to the "Picket Remuneration

Sheets" originally supplied.

4. The Supplemental Answers to Plaintiffs' Interrogatories added the statement that, "Based upon the Union's investigation, Daniel McMahon recommended to William Schambach that the Union initiate a campaign against Orgler to protest the payment of substandard wages and benefits."

5. The Supplemental Answers to Plaintiffs' Interrogatories noted an additional website which defines area standard wages.

6. The Supplemental Answers to Plaintiffs' Interrogatories added the statement that "it is common knowledge in the highly competitive residential construction market in Lake and McHenry Counties that those carpentry contractors who are not a party to a collective bargaining agreement almost never pay the prevailing wages and benefits."

(Defendants' Response at 4-5).

Plaintiffs point out that this newly discovered evidence had been around since 2006 and that these disclosures and the associated supplementation came well after fact discovery had closed on September 17, 2007. (Plaintiffs' Motion to Strike at 1). Plaintiffs claim that they "have no ability to present evidence to contest or verify the new factual allegations" because fact discovery is closed, leaving them "without the ability to confront the 'evidence.'" (Plaintiff's Motion at 5, 7). In order to level the playing field, plaintiffs insist that the court must dismiss defendants' motion for summary judgment as a sanction for failing to have produced this discovery sooner.

Rule 37(c)(1) states that a party who without substantial justification fails to disclose information required by Rule 26(e)(1) is not allowed to use that information as evidence unless such failure is harmless. Fed.R.Civ.P. 37(c)(1). In reviewing whether plaintiffs' failure to disclose was harmless, the court considers the following: (1) the prejudice or surprise to the party against whom the evidence is offered; (2) the ability of the party to cure the prejudice; (3)

the likelihood of disruption to the trial; and (4) the bad faith or willfulness involved in not disclosing the evidence at an earlier date. *David v. Caterpillar, Inc.*, 324 F.3d 851, 857 (7th Cir. 2003).

The court finds that the prejudice allegedly inflicted upon plaintiffs has been greatly exaggerated and was capable of being cured. Plaintiffs had the ability to file with the court an affidavit outlining any discovery it perceived as necessary in order to fully respond to the pending Motion for Summary Judgment under Federal Rule of Civil Procedure 56(f). ("If a party opposing the motion [for summary judgment] shows by affidavit that, for specified reasons, it cannot present facts essential to justify its opposition, the court may . . . order . . . other discovery to be undertaken."). If discovery into defendants' supplementation could have aided plaintiffs in demonstrating the existence of a factual dispute, the court could have granted plaintiffs a temporary reprieve from briefing the Motion for Summary Judgment so as to allow for the discovery proposed in their Rule 56(f) affidavit. Plaintiffs elected not to file a Rule 56(f) affidavit, which suggests that the discovery at issue was not as material as alleged.

Furthermore, it does not appear that defendants' supplementation was in bad faith. Although this information could have been solicited from these witnesses before the close of fact discovery, there is no indication that it was. There is also no indication that the defendants withheld this information from the plaintiffs. Rather, it appears that defendants promptly disclosed this information once it was revealed to them.

The court is convinced that defendants' failure to disclose this material at an earlier time was harmless. As such, plaintiffs' Motion to Strike Defendants' Memorandum in Support of its Motion for Summary Judgment is denied.

## II. Defendants' Motion to Bar Evidence Related to Damages

Defendants' Motion to Bar Evidence Related to Damages asserts that plaintiffs have repeatedly failed to supplement and/or produce documents in support of their claim for damages despite various production requests, Local Rule 37.2 consultations, and motions to strike/bar/compel and sanction. Defendants claim to be prejudiced by plaintiffs' failure to supplement and/or produce these documents, many of which have since been relied upon by plaintiffs' expert in drafting plaintiffs' revised expert report. (Defendants' Motion to Bar at 1). Defendants' motion seeks to bar plaintiffs' claims for damages entirely, or in the alternative, to bar certain documents relating to damages. (*See* Defendants' Motion to Bar at 8). Plaintiffs contend that their production has been consistent with their obligations under the Federal Rules of Civil Procedure and that most of what defendants are requesting simply does not exist.

**1. Evidence Disclosed but not Timely Supplemented**:

Plaintiffs' check registers have not been supplemented since March 16, 2007. Plaintiffs' general ledgers have not been supplemented since October 31, 2007. Plaintiffs' financial statements have not been supplemented since January 16, 2007. Plaintiffs claim that the time for supplementing these records has not yet come since no change in plaintiffs' financial position has taken place since the last supplementation. (Plaintiff's Response at 10). However, defendants are not obligated to take plaintiffs' word for it. The court hereby orders that plaintiffs are to supplement the check registers, general ledgers and financial statements within thirty days.

**2) Evidence Reportedly Relied Upon by Plaintiffs' Expert Yet Wrongfully Withheld from Defendants**

      **A. The Purchase Agreement for lot 40**

Plaintiffs claim that they have not produced the lot 40 purchase agreement because it could not be located. (Plaintiff's Response in Opposition of Defendants' Motion to Bar at 7). Defendants have located and produced the HUD-1 Statement, which contains information about the closing date and price of Lot 40, as well as the contact information for the purchasers of lot 40.

Defendants point out that the HUD-1 statement fails to identify the date that the purchase agreement for lot 40 was signed. This date is critical, as plaintiffs have at times elected to calculate their pre-picketing market share and their associated lost volume of sales in a manner which counts a sale as taking place on the date that the purchase agreement was signed, rather than upon the date of the closing.[1] Plaintiffs' expert represents in his report that the purchase agreement for lot 40 was signed *before* the Union began picketing, thereby bolstering plaintiff's pre-picketing market share and exaggerating the loss of market share which purportedly took place once the Union commenced picketing. (*See* Defendants' Reply at 3-4). However, absent a copy of the dated purchase agreement, plaintiffs are unable to identify a single piece of documentary evidence in support of plaintiffs' expert's opinion that the lot 40 purchase

---

[1] Plaintiffs' expert's opinion on damages has relied at times upon the date of closings, at times upon the date of the purchase agreements, and at other times upon the dates that the purchasers orally "committed" to purchasing the homes. This moving target has, quite understandably, led defendants to seek as much information as possible about each of the subject sales so as to be fully equipped to counter plaintiffs' expert's opinion. This subject will be addressed in greater detail below in discussing defendants' Motion to Strike Plaintiff's Expert Report.

agreement was signed before the Union began picketing.

The lack of support for plaintiffs' expert's opinion must be explored during the expert's deposition. Barring any discussion of the lot 40 purchase agreement will not resolve the underlying hole in plaintiffs' expert's opinion. Since some other form of evidence may have been relied upon by the expert in arriving at his conclusion about the date of the lot 40 purchase agreement, the court will not strike evidence on this subject at this time.

### B. The HUD-1 Statements

The HUD-1 closing documents are relied upon by plaintiffs' expert in determining plaintiff's average profit per house sold. Defendants received the HUD-1 statements from plaintiff's expert on the day of his deposition, November 28, 2007. Although these documents were not produced pursuant to defendants' production requests, defendants have since obtained them and do not appear to have suffered any great harm by the delay. Therefore, the court will not bar the HUD-1 statements.

### C. Deposits Retained by Plaintiff for lot Sales at Railway Estates

Defendant has struggled to pin down the dates that plaintiffs received deposits on the lots at issue. Although the HUD-1 statements indicate the amount of the deposits, the HUD-1 statements are useless for purposes of identifying the date that the buyers committed to purchase the lots at issue. Plaintiffs insist that information concerning the lot deposits is contained in the financial data, ledgers and bank account records which have been produced. However, defendants claim to have scoured this material in search of the dates that these deposits were tendered, only to come up empty handed. (Defendants Reply at 6).

The court hereby orders plaintiffs to identify the date each deposit was tendered by

referencing the bates numbered documents in support. In the event plaintiffs cannot identify the date of a particular deposit by reference to the documents, they are to admit as much in writing and indicate with like specificity any other method of identifying the dates of the deposits.

### D. Evidence of Payments Made to Orgler from Orgler Broshar Development & Evidence of Lot Profits

Defendants claim that plaintiffs' lot profit analysis is purely speculative and lacking evidentiary support. Plaintiffs insist that evidence of payments made to Orgler from Orgler Broshar Development is contained in the financial information of Orgler Homes, which is already in defendants' possession.

The court hereby orders plaintiffs to identify by bates number each document demonstrating payments made to Orgler from Orgler Broshar Development. In the event plaintiffs cannot identify any such documents, they are to admit as much in writing.

### E. Evidence of Customer Commitments to Purchase lots Prior to Signing a Purchase Agreement

Plaintiffs' expert report counts the sale of the three properties purchased by Marvin Halwix in the pre-picketing time frame, despite the fact that the purchase agreements for these properties were signed after the Union's picketing had begun. Plaintiffs' expert report recounts a telephone call from Mr. Halwix in which Halwix "explained that he had committed to the purchase of these three units prior to the beginning of the construction of the model home," which makes the dates of the purchase agreements irrelevant for calculating damages, according to plaintiffs' expert. (Plaintiff's 3/13/08 Expert Report at 3). Defendants want any evidence of customer commitments to purchase other than the purchase agreements barred as a sanction since Halwix was never disclosed as a damage witness, and since plaintiffs' experts' revised

report is the first time this conversation with Halwix was disclosed.

The court is extremely skeptical about the utility of an expert opinion which calculates plaintiffs' market share by comparing plaintiffs' sales for a fixed period of time (identified by *either* the dates customers "committed" to purchase or by the dates that customers contracted to purchase), with sales for the same period of time by neighboring developments (which presumably are identified by only by the closing dates). It appears to the court as a rather transparent effort to compare apples to oranges. However, as with the lot 40 purchase agreement, the court prefers to allow evidence of customer commitments to purchase (however tenuous that evidence may be) to move forward and be explored during plaintiffs' expert's deposition. Then, once the parties have fully fleshed out the support for plaintiffs' expert's report (or the lack thereof), the report may be the subject of scrutiny under *Daubert* and Federal Rule of Evidence 702. However, striking evidence of so-called "commitments" to buy at this stage is simply premature.

### F. Accounting Records Regarding the Costs Associated with each of the Sales:

Plaintiffs claim that the accounting records which have already been produced contain the data necessary to calculate the gross profits on each home. However, defendants insist that they are not in possession of any records which can be used to establish the actual profits per home.

The court hereby orders plaintiffs to identify by bates number each document demonstrating profits per home. In the event plaintiffs cannot identify any such documents, they are to admit as much in writing.

## III. Defendants' Motion to Strike Plaintiffs' Expert's Report

9

On March 6, 2008, this Court entered a Memorandum Opinion and Order which stated:

> Although the court finds that the supplementation of Kleeman's report was justified to the extent that it sought to correct the corrupted data present in plaintiff's original expert report, defendants should not bear the cost for the untimely discovery of plaintiff's expert's mistakes. Plaintiff's expert report and the supplements thereto are hereby stricken, along with defendants' expert report in rebuttal. Plaintiff is to file a new, comprehensive expert report by March 13, 2008. This date will not be extended and plaintiff's counsel is instructed not to use this as an opportunity to amend its damages theory.

(Dkt entry 323). Defendants Motion to Strike claims that plaintiffs' experts' revised report fails to comply with this court's March 6 order in that it presents an unauthorized amendment of plaintiffs' damages theory and fails to abide by numerous requirements of Fed.R.Civ.P. 26(a)(2)(1). (*See* Defendants' Motion to Strike at 1).

Plaintiffs' revised expert report relies upon new information concerning the allegedly unsolicited phone call from Marvin Halwix, the purchaser of three homes in Railway Estates, to plaintiffs' expert. (Memorandum in Support of Defendant's Motion to Strike at 3). Mr. Halwix reportedly informed plaintiffs' expert that Halwix had in fact verbally committed to purchase these three homes prior to actually signing the purchase agreement, effectively shifting these "sales" from the period of time during the Union's picketing to the pre-picketing time frame. *Id*.

However, the effort to shift sales which took place during the Union's picketing into the pre-picketing time frame does not constitute an amended damages theory. It admittedly seeks to recharacterize the data analyzed, but the underlying damages theory remains the same. Therefore, the court will not strike plaintiffs' expert report due to its reliance on the Halwix phone call.

As to the revised report's 26(a)(2)(1) deficiencies, it is clear that the revised expert report is deficient in the following ways: 1) it fails to identify which witness will testify to which

opinions; 2) it fails to include the exhibits which are used in support of the opinions given in the report; 3) it fails to identify the witnesses' qualifications; 4) it fails to include a list of publications authored by the witness in the past ten years; 5) it fails to include a list of all other cases which, during the previous four years the witness has testified as an expert at trial or by deposition; and 6) it fails to provide a statement of the compensation to be paid for the study and the testimony in the case. *See* Fed.R.Civ.p. 26(a)(2).

Although plaintiffs' revised expert report fails to satisfy these requirements of Rule 26(a)(2), the original report satisfies each of the rule's requirements, making the amended report's failures in this regard harmless. Defendants' Motion to Strike Plaintiffs' Expert Report is denied.

ENTER:

_____
P. MICHAEL MAHONEY, MAGISTRATE JUDGE
UNITED STATES DISTRICT COURT

DATE: May 30, 2008